United States Court of Appeals,

Fifth Circuit.

No. 93-7207.

HERRING GAS COMPANY, INC. and Edward G. Herring, Plaintiffs-Appellees,

v.

W. Otto MAGEE and Michael B. Burris, Defendants-Appellants.

June 9, 1994.

Appeal from the United States District Court for the Southern District of Mississippi.

Before DUHÉ and EMILIO M. GARZA, Circuit Judges, and STAGG, District Judge.[*]

EMILIO M. GARZA, Circuit Judge:

W. Otto Magee and Michael B. Burris appeal a judgment which declares that a noncompete agreement is enforceable in Louisiana. Magee and Burris argue that the Mississippi Supreme Court, if presented with this case, would hold the noncompete agreement unenforceable in Louisiana, and therefore the district court, sitting in diversity, should have held the contract unenforceable in Louisiana as well. We affirm.

I

The following facts are undisputed. Edward G. Herring is the principal stockholder in Herring Gas Company, Inc. ("Herring Gas"), a concern which sells propane to residential and commercial customers in Louisiana and Mississippi. At times relevant to this appeal Herring Gas operated retail stores in nine or ten

_____

[*]District Judge of the Western District of Louisiana, sitting by designation.

communities in Mississippi, with annual sales of 10,000,000 gallons of propane.  Herring Gas operated retail stores in three or four communities in Louisiana, with annual sales of 2,000,000 gallons.[1]

Magee worked for Herring Gas as supervisor of retail sales in Louisiana and Mississippi, and owned about five percent of the company's stock, until his employment was terminated by a written agreement.  The agreement—among Magee, Burris,[2] Herring, and Herring Gas—provides for Herring Gas to purchase all of Magee's stock and stock rights.  The agreement also contains a covenant not to compete, wherein Magee and Burris agree not to "engage in any activity competitive with or adverse to Herring Gas Company, Inc., business" within 50 miles of any location of Herring Gas.  The term of the noncompete agreement is six years, and it is stipulated that the agreement "shall be subject to and governed by the laws of the State of Mississippi."

After the agreement was signed, Magee and Burris discovered that a Louisiana statute forbids enforcement of noncompete agreements beyond a term of two years.  La.Rev.Stat.Ann. § 23:921 (West Supp.1994) provides:

A. Every contract or agreement, or provision thereof, by which

---

[1]The precise number of retail stores in Mississippi and Louisiana is unclear.  The district court noted that there was "some question regarding whether ... Herring Gas operated retail stores in Purvis, Mississippi, and Ferriday, Louisiana."  Whether stores were operated in those two communities, however, is not material to any issue raised on appeal.

[2]Burris was an employee and stockholder of Herring Gas until he sold his stock to Magee.  At that point Magee agreed to pay Burris 257 of the proceeds of a subsequent sale of his stock in Herring Gas.

anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this section, shall be null and void.

\* \* \* \* \* \*

C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

Over two years after the agreement was signed, Magee and Burris informed Herring and Herring Gas of the existence of § 23:921.

Herring and Herring Gas then filed suit in federal district court in Mississippi, seeking a declaratory judgment that the noncompete agreement is fully enforceable against Magee and Burris. Magee and Burris counterclaimed for a declaratory judgment that the noncompete agreement is unenforceable in Louisiana, alleging that the agreement is contrary to the public policy of Louisiana, as expressed in § 23:921. The parties submitted cross-motions for summary judgment, and the district court granted summary judgment in favor of Herring and Herring Gas. *See Herring Gas Co., Inc. v. Magee,* 813 F.Supp. 1239 (S.D.Miss.1993). Magee and Burris appeal.

II

Magee and Burris argue that the district court erred by granting a declaratory judgment that the noncompete agreement is enforceable in Louisiana. Although the parties to the agreement stipulated that the contract would be governed by Mississippi law, Magee and Burris contend that La.Rev.Stat.Ann. § 23:921 bars

3

enforcement of the noncompete agreement in Louisiana. According to Magee and Burris, the Mississippi Supreme Court, applying Mississippi conflict of laws rules, would follow § 23:921 insofar as the agreement is to be enforced in Louisiana, because (1) Louisiana has a fundamental policy against noncompete agreements with a term greater than two years, and (2) Louisiana has a materially greater interest than Mississippi in the enforcement of the noncompete agreement in Louisiana. *See* Restatement (Second) of Conflict of Laws § 187(2)(b) (1971). Magee and Burris contend that the Mississippi Supreme Court would have held the agreement unenforceable in Louisiana under Louisiana law, but enforceable in Mississippi according to Mississippi law.

We review the district court's grant of a summary judgment motion de novo. *Davis v. Illinois Cent. R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991). Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Because federal jurisdiction in this case is premised on diversity of citizenship, the district court was bound to apply the conflict of laws rules of the forum state—Mississippi. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *Allison v. ITE Imperial Corp.,* 928 F.2d 137, 138 (5th Cir.1991) (citing *Erie* and *Klaxon* ). The district court held that the Mississippi Supreme

4

Court would follow § 187 of the Restatement (Second) of Conflict of Laws in deciding whether Mississippi substantive law—which the parties chose—or Louisiana substantive law would govern the enforcement of the noncompete agreement.[3] Magee and Burris do not challenge the district court's determination that the Mississippi Supreme Court would follow § 187, and we assume *arguendo* that that determination is correct.[4]

Section 187 provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless ... application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[5]

---

[3]Because "the Mississippi Supreme Court ha[d] not expressly addressed Section 187," the district court attempted to predict how the Mississippi Supreme Court would rule if it were to consider § 187. *Cf. Thomas v. Hoffman-LaRoche, Inc.,* 949 F.2d 806, 812 (5th Cir.) (discussing "the most likely result to be reached by a Mississippi court"), *cert. denied,* --- U.S. ----, 112 S.Ct. 2304, 119 L.Ed.2d 226 (1992); *Hanley v. Forester,* 903 F.2d 1030, 1032 (5th Cir.1990) ("In resolving the question of which state's law is best applied to the particular facts of this case ... we are confronted with deciding how the Supreme Court of Mississippi would rule...." (citations omitted)).

[4]*But see Miller v. Fannin,* 481 So.2d 261, 262 (Miss.1985) ("The intention of the parties as to the law governing the validity, construction and effect of a property settlement or separation agreement will be respected in the absence of anything violating the public policy of the *forum* jurisdiction." (emphasis added)).

[5]Section 188 provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

5

Restatement (Second) of Conflict of Laws § 187(2)(b). The district court held that under § 187 Mississippi law governs the contract, and La.Rev.Stat.Ann. § 23:921 "has no bearing on the Court's analysis," because (1) "Louisiana does not have a materially greater interest in the enforceability of the covenant not to compete;" and (2) Louisiana "would not be the state of the applicable law under Section 188" of the Restatement. The district court reasoned that Louisiana did not have a materially greater interest in enforcement of the contract because "two of the parties to the termination agreement [Herring and Herring Gas] are Mississippi residents, the termination agreement was executed in

---

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflict of Laws § 188. Section 6 of the Restatement, referred to in § 188, is quoted *infra.*

6

Mississippi, and the covenant not to compete restricts the rights of [Magee and Burris] to do business in Mississippi to a greater degree than it does in Louisiana." With regard to the latter conclusion, the district court noted that most of the Herring Gas retail stores, and the bulk of its sales, are in Mississippi.

Magee and Burris contend that the district court erred because the Mississippi Supreme Court would have found that Louisiana has a materially greater interest in the enforcement of the noncompete agreement *in Louisiana.*[6] Magee and Burris essentially contend that the district court erred in identifying "the particular issue" when deciding whether Louisiana "has a materially greater interest than [Mississippi] in the determination of the particular issue." Restatement (Second) of Conflict of Laws § 187(2)(b). The district court identified the particular issue as the enforcement *vel non* of the noncompete agreement. Magee and Burris describe the particular issue more narrowly—as the enforcement *vel non* of the noncompete agreement *in Louisiana.* They contend that the Mississippi Supreme Court would regard the operation of the noncompete agreement in Louisiana and in Mississippi as two separate issues, and would

---

[6]Magee's and Burris's brief could also be construed as challenging the district court's conclusion that Louisiana "would not be the state of the applicable law under Section 188" of the Restatement. However, because Magee and Burris fail to show that the district court erred by concluding that Louisiana does not have a materially greater interest in the enforcement of the noncompete agreement, *see infra,* Magee and Burris would not be entitled to relief, even if the district court's conclusion regarding § 188 was erroneous. *See* Restatement (Second) of Conflict of Laws § 187(2)(b) (describing conjunctively the conditions for departing from the parties' choice of law). Therefore we do not decide whether the district court's holding regarding § 188 is correct.

7

conclude that Louisiana has a materially greater interest in the former.[7]  We disagree.

The cases which Magee and Burris cite do not suggest that the Mississippi Supreme Court would divide the "materially greater interest" analysis along state lines, although *Grace v. Orkin Exterminating Co.,* 255 S.W.2d 279 (Tex.Civ.App.—Beaumont 1953, writ ref'd n.r.e.), at first blush may appear to support their argument.[8]  There it was held that, although Louisiana law governed the enforcement of a noncompete agreement in Louisiana, it did not govern enforcement of the agreement in Texas.  *See id.* at 291.  The court stated:  "The operation of these covenants can be conveniently divided by the boundary between Texas and Louisiana."  *See id.*  However, the logic of *Grace* does not require a similar division of the agreement in this case.

In *Grace,* the parties did not stipulate which state's law governed their agreement, so the district court sought to divine the parties' unstated preference regarding choice of law.  The

_____

[7]The district court decided that Louisiana has "at most, an interest equal to that of Mississippi" in the enforcement of the agreement in both states.  Therefore, the district court concluded that the Mississippi Supreme Court would apply Mississippi law to the enforcement of the agreement in Louisiana and in Mississippi.  Magee and Burris contend that Louisiana has a materially greater interest than Mississippi in the enforcement of the contract in Louisiana because two of the four parties to the agreement are domiciled in Louisiana, and insofar as the contract is enforced in Louisiana, the place of performance and the location of the subject matter are entirely in Louisiana. *Cf.* Restatement (Second) of Conflict of Laws § 188.

[8]Of course we recognize that the Texas court's application of Texas conflict of laws principles in *Grace* provides, at most, an instructive analogy which the Mississippi courts would not be bound to follow.

court presumed that the parties intended to make a valid agreement. Therefore it inferred that the parties intended the agreement to be governed in Texas by Texas law, which permitted the enforcement of the parties' bargain.[9]   In this case, by contrast, dividing the operation of the noncompete agreement along state lines would violate the parties' expressed intent:  the parties stipulated that Mississippi law should govern the enforcement of the contract in both Louisiana and Mississippi.  Furthermore, whereas in *Grace* the court bifurcated the operation of the contract in order to give the parties' agreement "such legal effect and validity as could be given it," dividing the operation of the noncompete agreement here would (at least according to Magee's and Burris's argument) nullify the parties' bargain—both as to choice of law and as to the effect of the noncompete agreement in Louisiana.  *Grace* therefore does not support Magee's and Burris's position.[10]

We, like the parties to this appeal, have been unable to find a case where the issue now before us, or one similar to it, has been decided.  However, we have recourse to decisions describing Mississippi's conflict of laws principles, and to the Restatement

---

[9]*See Grace,* 255 S.W.2d at 292-93 ("We conclude that the parties to the written contract intended their written agreement to be given such legal effect and validity as could be given it, and as an incident of this intention should be taken to have necessarily intended that validity be determined by the system of law which would give effect to the agreement rather than by a system which would hold it invalid.").

[10]Magee and Burris cite numerous other cases in arguing that the "particular issue" in this case is the operation of the noncompete agreement in Louisiana.  The cases cited do not support that argument.

(Second) of Conflict of Laws, which the Mississippi Supreme Court has adopted.[11]

Under Mississippi law, contracting parties can decide which state's law will govern their agreement. In *Castleman v. Canal Bank & Trust Co.,* 171 Miss. 291, 156 So. 648 (1934), the Supreme Court of Mississippi stated:

> [W]e regard it as the settled law that, when a substantial portion of a transaction has been had and is to be had in one state and a substantial portion in another, the parties may by express terms agree as to which of the laws of the two states are to govern in respect to the obligations of that contract.... [S]o long as made in good faith and under admissible facts, such a stipulation is as good in law as any other provision which, under the liberty of contract, the parties may elect to insert in their agreement.

*Id.* at 649 (citations omitted). "The general rule is that courts will give effect to an express agreement that the laws of a specified jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." *Miller v. Fannin,* 481 So.2d 261, 262 (Miss.1985), *cited in Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.,* 619 So.2d 908, 911 (Miss.1993).

The Mississippi Supreme Court has also made it clear that its conflict of laws jurisprudence will be guided by the considerations outlined in § 6 of the Restatement. *See Ford v. State Farm Ins. Co.,* 625 So.2d 792, 794 (Miss.1993) (stating that the Mississippi Supreme Court, "[e]mbracing" § 6, "enumerated a number of factors

---

[11]*See Newman v. Newman,* 558 So.2d 821, 823 (Miss.1990) ("[I]n 1968 this Court embraced the choice of law principles now generally advanced in Restatement (Second) of Conflict of Laws (1971).").

relevant to a choice of law determination"); *Spragins v. Louise Plantation, Inc.,* 391 So.2d 97, 99-100 (Miss.1980) ("In cases involving a choice-of-law or conflict-of-law problem, this court has adopted the center of gravity doctrine or the most significant relationship test.... Especially helpful in identifying choice-influencing considerations and the most significant relationship is § 6 of [the Restatement]."); *Mitchell v. Craft,* 211 So.2d 509, 516 (Miss.1968) (adopting § 6).

Therefore, were the Mississippi Supreme Court to apply Restatement § 187 to this case, we believe that that court's ruling would be guided by (1) the principle that the contacting parties' choice of law should generally be honored; and (2) the considerations enumerated in Restatement § 6. Section 6 provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. The application of these considerations to the facts of this case leads us to the conclusion that the Mississippi Supreme Court would not adopt the approach advocated by Burris and Magee—viewing the "particular issue" as the enforceability of the noncompete agreement in Louisiana alone. If presented with this case, the Mississippi Supreme Court would take the approach which the district court took—deciding whether Louisiana has a materially greater interest than Mississippi in the enforceability of the agreement in both states.

Section 6(2)(c) of the Restatement admonishes the court to consider "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue." Louisiana is clearly an interested state, and its policies and interests would be better served by the application of its laws—specifically La.Rev.Stat.Ann. § 23:921—within its borders. Furthermore, the approach to Restatement § 187 advocated by Magee and Burris is more likely to result in the application of Louisiana law to the noncompete agreement in Louisiana. Magee and Burris point out that two of the four parties to the agreement are domiciled in Louisiana, and *insofar as the contract is to be enforced in Louisiana,* the place of performance and the location of the subject matter of the agreement are located entirely within the state's boundaries. Consequently, identifying enforceability *in Louisiana* as the "particular issue" is more likely to result in a finding that

Louisiana has a materially greater interest, and in the application of Louisiana law despite the parties' stipulation to the contrary.

Nevertheless, other factors lead us to the conclusion that the Mississippi Supreme Court would not adopt the solution proposed by Magee and Burris. The commentary to § 6 explains that § 6(2)(d)—requiring that consideration be given to "the protection of justified expectations"—is especially important in cases where the parties have stipulated as to choice of law. *See* Restatement (Second) of Conflict of Laws § 6 cmt. c (stating that "[v]arying weight will be given to a particular factor ... in different areas of choice of law," and that "the policies in favor of protecting the justified expectations of the parties ... come to the fore in the rule that, subject to certain limitations, the parties can choose the law to govern their contract (see § 187)"). Here the justified expectations of the parties are expressed in the explicit terms of their contract: that (1) the law of a single state—Mississippi—will govern their agreement; and (2) the noncompete provision of that agreement will protect Herring Gas's business interests in Mississippi and in Louisiana. Because the approach to § 187 advocated by Magee and Burris would imperil these justifiable expectations, § 6(2)(d) counsels in favor of rejecting Magee's and Burris's position.

Furthermore, protection of the parties' justified expectations in this case is conducive to the realization of two other goals outlined in Restatement § 6: "certainty, predictability and uniformity of result" and "ease in the determination and

13

application of the law to be applied." *See id.* § 6(2)(f) and (g).
The commentary to § 187 states:

> Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. These objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. *In this way, certainty and predictability of result are most likely to be secured.*

*Id.* § 187 cmt. e (emphasis added). Protection of the parties' expectations lends itself to ease in the determination and application of the law to be applied because the regime agreed to by the parties is simpler to administer than the one now proposed by Magee and Burris. They advocate bifurcating the "materially greater interest" analysis and applying the laws of two states rather than one.

Along with Mississippi's general principle in favor of honoring the choice of law of the parties, the balance of factors under Restatement § 6 leads us to conclude that the Mississippi Supreme Court would not bifurcate the "materially greater interest" analysis under Restatement § 187, even though that solution would better protect the policies and interests of Mississippi's sister state. *See id.* § 187 cmt. e ("It may likewise be objected that, if given this power of choice [of the governing law], the parties will be enabled to escape prohibitions prevailing in the state which would otherwise be the state of the applicable law. Nevertheless, the demands of certainty, predictability and convenience dictate that, subject to some limitations, the parties should have the power to choose the applicable law."). We therefore reject Magee's

14

and Burris's argument that the Mississippi Supreme Court would have found that Louisiana has a materially greater interest in the enforcement of the noncompete agreement in Louisiana, and Magee and Burris fail to show that the district court erred by honoring the parties' choice of the law of Mississippi, and by holding that the noncompete agreement is fully enforceable.

III

For the foregoing reasons, we **AFFIRM** the summary judgment in favor of Herring and Herring Gas.